UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHERRY L. CAMPBELL,

      Plaintiff,

v.                                 Case No. 05-74472

AVIS RENT A CAR SYSTEM, INC.,         HONORABLE AVERN COHN

      Defendant.

_____/


**MEMORANDUM AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.

      This is a religious discrimination case.  Plaintiff Sherry Campbell (Campbell) is

suing her former employer, defendant Avis Rent a Car System, Inc. (Avis) alleging a

religiously hostile environment and discriminatory discharge based on religion in

violation of the Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

      Before the Court is Avis' motion for summary judgment.  For the reasons that

follow, the motion is DENIED.

II.  Background

      The material facts as gleaned from the parties papers follow.

A.

      Campbell began her employment with Avis on July 2, 2004 as a courtesy bus

driver at the Detroit Metropolitan Airport.  Campbell's employment duties consisted of

transporting customers between the terminals at the airport and the Avis facility in one continuous circuit.  Campbell worked the night shift, which included several other courtesy bus drivers (greater than four) and a number of supervisors.

Campbell converted to the Muslim religion in December 2004.  Because Avis requires its employees to wear a standardized uniform, she approached her supervisors and was granted permission to wear a hijab, a head scarf.  The Muslim faith requires its followers to pray five times a day, each prayer taking about ten minutes.  Campbell's supervisors told her that she could go on break whenever she needed to pray.

At her deposition, Campbell described the following five incidents of religious harassment:

1.      In late December 2004 or early January 2005, another courtesy driver, Marcella, told another employee, Monique, that Campbell "used to wear braids in her hair and now she's a Muslim, blah, blah, blah."  Monique informed Campbell of this statement.  Campbell told her supervisors, who told her to ignore Marcella, that Campbell was too good of a worker to get involved in any exchange of words.  Although Campbell states in her deposition that she was satisfied with this answer, she now states that she was not satisfied with the responses she received from her supervisors.

2.      Campbell says that after her conversion, other drivers began treating her differently, staring at her and interrupting her when she was "calling codes."  Calling codes was the procedure for announcing on the radio frequency to the other drivers what action was being taken.  When Campbell called a "10-7" for taking a bathroom or prayer break, another driver might jump in and take a break before her.  Campbell says that this prevented her from praying at that particular time.  However, prior to her religious conversion, she concedes that she had conflicts with other drivers not calling codes and "being bold" with her.  Campbell says that the past conflicts differ in that laziness was the cause, not religious intolerance.

3.      Another Driver, Robert Fitz, said to Monique, who in turn told Campbell, that it was "stupid" that Campbell had to  "go down five times and pray."  Campbell told her supervisors who responded that she should ignore him.

2

4.      On April 10, 2005, Monique called Campbell at home and informed her that the afternoon shift lead bus driver, Russ Soderquist, said to her that Avis should not be hiring Muslims, that Campbell should stay at home and have a husband provide for her and that Campbell was a disgrace and was a symbol of 9/11 to customers.  Campbell never spoke to Soderquist him to ascertain whether he made the statements.  However, she reported this to one of her managers, Henry Turner, who said that Soderquist's comments were a form of discrimination that would not be tolerated and that he would follow up with management.  Campbell also registered an anonymous complaint with the integrity hotline at Avis and told her union representative.  A meeting was convened with Campbell, a union representative and three managers in which it was concluded that an investigation would be conducted.  Drivers were separately questioned by management with the union present.  Campbell heard from her union steward that Soderquist admitted making the comments.  She then approached another driver who told her that Soderquist had made a similar statement to him.  Campbell was told by management to refrain from questioning other drivers, as she should leave the investigation to management.

5.      While the investigation was occurring, Campbell alleges that other drivers "got worse calling their codes."  For example, Campbell would be waiting with a busload of people at the terminal and the next driver would not tell her of his approach.  Asked why she did not just leave the terminal without hearing the code, Campbell said this would have been contrary to procedure.  However, she never got in trouble and each time she called the Avis facility, she was given permission to depart.

On April 25, 2005, Campbell consulted with a physiological social worker and submitted a request for leave of absence, with a diagnosis of major depressive disorder. In her request, Campbell stated the disability as: "Stress from job (co workers).  My religion[sic] beliefs brought on my stress from co workers."  Campbell did not return to work thereafter.

Campbell later received a letter from the Human Resource Representative, Ben Carravallah (Carravallah), advising her that the investigation remained in process.  The majority of drivers who worked the afternoon and night shifts were questioned regarding the Soderquist harassment incident.  As a result of the investigation, it was concluded that Soderquist had violated Avis' Anti-harassment-Anti-discrimination Policy.  He was

3

given a verbal warning and ordered to review the harassment policy with Carravallah.

On May 5, 2005, still on her medical leave for stress, Campbell submitted a second medical leave request.  This request indicated that Campbell would have surgery on her toes for ingrown nails and would be off work for four weeks, an extension of her time off from the stress leave.  In the May 5 request, Campbell stated:\

> Dropped luggage on my feet, handling customers luggage 4-23-05.  Previously have seen Dr. Seel to have work done on my feet, Luggage hitting toe made it swell more.

Apparently, Campbell had experienced fungus in her toes for years and planned on having surgery in July 2005 but wanted to have it earlier because she was on stress leave.  In her deposition, she admits that she told Dr. Seel, "I've decided I would like to have them done now secondary to me having them injured recently with luggage being dropped on them," but now says that is not what she meant.  On a form which required Dr. Steel to answer the following question:  "In your opinion, is this disability the result of injury arising out of and in the course of employment or occupational disease," Dr. Seel checked the box marked "No."

Upon receiving the May 5 request for medical leave, Carravallah contacted Campbell and asked why she had not reported the accident of April 23, 2005.  Campbell told him that the luggage dropping on her feet occurred near the end of her shift and she did not want to be bothered because the process took forever for reporting an injury.  She maintains that the incident was not an accident and just a part of her job.

The work rules at Avis and its labor agreement, signed by Campbell, provide for discharge on a first offense basis for "failure to immediately report an accident which resulted in personal injury or property damage."

4

Campbell was suspended and then discharged for failure to immediately report the April 23 accident.

A grievance contesting the discharge was filed by Campbell through the union.  It was dismissed when Campbell failed on two separate occasions to appear for a hearing before a union review board.

B.

On November 23, 2005, Campbell filed the instant action claiming religious discrimination in the form of harassment (hostile work environment) and disparate treatment.

III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

5

summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV.  Analysis

Michigan's Elliot-Larsen Civil Rights Act protects individuals from discrimination based on religion.  M.C.L. § 37.2202.  As noted above, Campbell claims religious discrimination in the form of harassment and disparate treatment.  Each claim will be separately addressed.

A.  Religious Harassment

1.  Legal Standard

In order to make a prima facie case of religious harassment, Campbell must

6

show that (1) she was a Muslim, (2) she was subjected to communication or conduct on the basis of her religion, (3) the communication or conduct was unwelcome, (4) the conduct or communication was intended to or in fact did substantially interfere with her employment or created an imtimidating, hostile or offensive work environment and (5) there exists respondeat superior liability.  Radtke v Everett, 442 Mich. 398, 381 (1993); Hafford v Seidner, 183 F. 3d 506 (6th Cir. 1999).

### 2.  Application

Avis says that it is entitled to summary judgment on this claim because (1) the alleged conduct was not severe or pervasive and did not create a hostile environment and (2) Avis took prompt and appropriate remedial measures when Campbell complained of the conduct.

### a.  Severe or Pervasive Harassment

Conduct must be severe or pervasive enough in which a reasonable person would find it hostile or abusive and the victim must regard the environment as abusive. Courts look at all of the circumstances, including the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.  See Harris v Forklift Sys. Inc., 510 U.S. 17, 23 (1993); Abeita v TransAmerica Mailings, Inc., 159 F. 3d 246, 251 (6th Cir. 1998).  Conduct must be extreme to amount to a change in the terms and conditions of employment.  Simple

7

teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  See Faragher v City of Boca Raton, 524 U.S. 775, 788 (1998).  While the harassing comments need not be directed at the plaintiff for there to be a cause of action, where most of the comments are not directed at the plaintiff, the conduct will most likely not be severe enough to create an objectively hostile environment.  Black v Zaring Homes, 104 F. 3d 822 (6th Cir. 1997).

Avis first focuses on Campbell's allegation of harassment by other drivers not calling codes, stating that it cannot be based on religion because it occurred before her conversion.  This argument is not well-taken.  Campbell testified that following her religious conversion, the frequency of drivers not calling their codes increased and was intentional because drivers would interfere with her codes for prayer breaks as well as stare at her.

Avis also says that certain comments made by co-workers (outlined above) about Campbell's religion cannot form the basis of a religious harassment claim.  Avis refers to the comment that Campbell "used to wear braids and now was a Muslim, blah blah blah" and the comment regarding Campbell having to "go down and pray five times a day."  The Court disagrees with Avis.  Reasonable minds could differ on whether or not these comments constitute religious harassment.  This is especially so in light of the fact that Avis admits that two religiously intolerant comments were made by one of its employees - Soderquist.  Moreover, although Avis points out that all comments were "second hand," it concedes that harassing comments do not need to be directed at the plaintiff in order for there to be a cause of action.  Clark v Zaring Homes, 104 F. 3d 822

8

(6th Cir. 1997).

Applying <u>Harris</u>, the Court finds that under the circumstances, the frequency of the discriminatory conduct could be looked on as high as it was continuous in duration, severe, humiliating, not a mere offensive utterance, and unreasonably interfered with her work performance.  The comments also appear to have had a direct effect on Campbell, which warranted leave granted by a mental health clinician.  In short, reasonable minds could differ and therefore there is a genuine issue of material fact as to whether the incidents of harassment constitute severe or pervasive harassment.

b.  Prompt Remedial Action

In order for Avis to be liable under a claim based on a hostile environment, Avis must have actual or constructive notice of a hostile environment and have failed to take prompt remedial action.  <u>Chambers v Trettco, Inc.</u>, 463 Mich 297 (2000).  Avis avoids liability for hostile work environment when it adequately investigates and takes prompt and appropriate remedial action upon notice of the alleged hostile work environment. <u>Downer v Detroit Receiving Hosp.</u>, 191 Mich. App. 232, 234 (1991).  One measure of the adequacy remedial action is whether the action ended the complained of harassment.  <u>Chambers</u>, 463 Mich. at 319.

Avis says that the first substantive complaint of religious harassment by Campbell was made April 10, 2005 regarding the Soderquist incident and Avis promptly took action.  This is not entirely correct.  The record shows that Campbell complained of harassment to her supervisors three times before.  She was told to ignore the comments.  It was not until Campbell reported, through a third party hotline, that Avis responded by investigating.  The investigation lasted forty-five days, and between the

9

time the investigation commenced and Campbell took stress leave, Campbell says that other drivers continued to harass her. Campbell complained to management and they took no action. These measures do not meet the <u>Chambers</u> test because the remedial action appears to not have stopped the complained of harassment. Reasonable minds could differ on whether Avis's actions in response to Campbell's complaints constitute prompt remedial action. As such, summary judgment in not appropriate on Campbell's claim of religious harassment.

### B. Disparate Treatment

#### 1. Legal Standard

In order to establish discharge based on disparate treatment, Campbell must show that (1) she was Muslim, (2) she was qualified for her position, (3) she was subjected to an adverse employment action, *i.e.,* her termination, (4) Avis treated similarly situated employees outside of her religious class more favorably and (5) the person who made the decision to impose the adverse employment action knew of her religious beliefs. <u>Rasheed v. Chrysler Motors Corporation</u>, 196 Mich. App. 196 (1992), *affirmed in part, reversed in part* 445 Mich. 109 (1994). Under a shifting burden analysis, Avis has the burden of producing evidence of a legitimate non-discriminatory business justification for the discharge. <u>Hazel v. Ford Motor Co</u>, 464 Mich. 456 (2001). Once Avis has proffered a non-discriminatory business justification, Campbell has the burden of showing that Avis's justification is a pretext. <u>Id</u>. Pretext requires a showing by a preponderance of the evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer" toward him. <u>Lytle v. Malady</u>, 458 Mich. 153, 176 (1998).

10

2.  Application

Avis says that it is entitled to summary judgment on Campbell's claim of disparate treatment based on religion because Avis had a legitimate business reason to discharge her i.e., her violation of the Labor Agreement and Work Rules and Campbell cannot show that this reason was pretextual.

Campbell was discharged for violation of Article 16, Section 2 of the Labor Agreement and Avis' work rules, both of which provide for discharge on a first offense basis for failure to immediately report an accident resulting in personal injury or property damage.

The record, however, is not entirely clear on whether this was a legitimate basis for discharging Campbell.  Campbell says that the luggage incident was not an "accident" which would trigger Avis's reporting requirements.  Moreover, Union Stewards Addison Walker and Marcus Johnson testified at deposition that the luggage incident was not an accident that warranted reporting as dropping luggage is a commonplace occurrence.  Campbell also says that she had a chronic foot problem before she began working for Avis and was scheduled to have surgery for this condition in July 2005.  Whether Campbell or Dr. Steel initiated the idea to have the surgery while on stress leave is irrelevant.  Viewed in a light most favorable to Campbell, the dropped luggage incident appears to have exacerbated a pre-existing condition.  Indeed, Dr. Steel noted that the injury was not work related.

Avis's evidence that other non-Muslin employees were treated similarly also falls short.  Both Walker and Johnson testified at deposition that they told Avis they too had dropped luggage on their toes and not reported it and were not discharged.  Avis cites

11

the affidavit of Kristine Vergaggio.  However, Vergaggio discusses Avis employees who did not hold the same position as Campbell and were terminated for not reporting property damage as opposed to a personal injury.  Carravallah also testified at deposition that he recalls one former Avis employee who was terminated for not reporting tripping "over a plate" but that employee also had been subjected to prior discipline for parking his car on the company lot.  Thus, it is not clear that he was similarly situated.  Carravallah also mentions former employees who were terminated for not reporting property damage.

Campbell has offered evidence to support the assertion that Avis' business reason for terminating her employment was a pretext for discrimination.  Again, to establish pretext, she must prove that the reason for discharging her (1) had no basis in fact, (2) did not actually motivate Avis's decision, or (3) was insufficient to warrant her discharge.  Weigel v Baptist Hosp. of East Tenn., 302 F.3d 367, 378 (6th Cir. 2002).  As Campbell points out, there is no evidence that a non-Muslin employee was terminated for not reporting dropped luggage.  Campbell has never claimed that the luggage incident resulted in a personal injury.  Moreover, Versaggio stated that the policy requiring reporting personal injuries is an attempt to control workers' compensation costs. Campbell, however, never filed a workers' compensation claim.  It is not clear that the luggage incident motivated her discharge, particularly because Campbell was on stress leave at the time of discharge.  Campbell had a history of reporting perceived discriminatory activity to third parties and administrative agencies.  In light of the record, there is a genuine issue of material fact as to whether Campbell's termination was motivated by her religion.  Overall, Avis is not entitled to summary

12

judgment on Campbell's disparate treatment claim.

    SO ORDERED.


                                    s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


Dated:  October 5, 2006


I hereby certify that a copy of the foregoing document was mailed to the parties of
record on this date, October 5, 2006, by electronic and/or ordinary mail.


                                    s/Julie Owens
                                    Case Manager, (313) 234-5160